# Scottish Union & National Insurance Co. v. Dangaix.

*Action against Insurance Company to recover Unearned Premiums.*

1. *Action against insurance company to recover unearned premiums; plea denying plaintiff's ownership, not sufficient unless verified by affidavit.*—Where, in an action against an insurance company by the assignee of claims for unearned premiums on policies issued by said company, to recover such unearned premiums, a plea denying plaintiff's ownership of the claim sued on, which is not verified by affidavit as required by Rule 29, page 810 of the Code, is demurrable.

2. *Same; when plea of former recovery insufficient.*—Where the complaint contains separate counts for each of several claims sued upon, a plea which alleges that the plaintiff has, before the bringing of the present suit, recovered judgment for some portion of his claims against the defendant, and that said judgment was still subsisting, is demurrable for failure to show which of the claims were embraced in the said judgment.

3. *Same; plea alleging the policies were procured by plaintiff as de-*

*fendant's agent no defense to the action.*—In an action against an insur-
ance company to recover unearned premiums by the assignee of
claims for such unearned premiums on policies issued by the de-
fendant, a plea alleging that the policies on which the unearned pre-
miums are claimed were procured by plaintiff as defendant's agent,
for the procurement of which plaintiff received a portion of the
premiums paid by the policy holders, that plaintiff, after ceasing to
be defendant's agent, induced the said policy holders to cancel the
policies for the purpose of depriving the defendant of the benefits
thereof, and then bought the unearned premiums in violation of de-
fendant's rights, avers no facts which constitute a defense to the ac-
tion, or precludes a recovery by the plaintiff, and a demurrer thereto
is properly sustained ; the policy holders having the absolute right
to cancel their policies, and to be immediately refunded their un-
earned premiums, had therefore, the right to assign their claims to
such premiums, which gave the assignee  the legal right to sue
thereon.

APPEAL from the Circut Court of Jefferson.

Tried before the Hon JAMES J. BANKS.

This action was brought by the appellee, W. J. Dan-
gaix, against the appellant corporation, The Scottish
Union & National Insurance Company, to recover cer-
tain return or unearned premiums on policies of insur-
ance, which had been issued by the defendant corpora-
tion to different persons, the holders of said policies hav-
ing cancelled them, as allowed under the terms of the
policies; and demanded the return of a certain propor-
tion of the premiums paid.   The plaintiff claimed as as-
signee of these various policy holders.   The action was
commenced on March 15, 1893.

The complaint contains 73 counts, each of which seeks to
recover separately the amount of the return or unearned
premiums due to individual policy holders, after the can-
cellation of their respective policies, which claims for
the unearned premiums had been  regularly transferred
and assigned to the plaintiff.   The defendant pleaded the
general issue, and the following special pleas :   1. "For
answer to the complaint the defendant says it is not in-
debted in manner and form as stated in the plaintiff's
complaint."   2. "For further answer to the complaint
the defendant says the plaintiff is not the owner of the
accounts or claims sued on."   3. "For further answer,
the defendant says that the policies of insurance named
in the complaint were procured by the plaintiff as the

agent of the defendant, and were issued by the defendant, through the plaintiff as their agent, and for the procurement of the policy holders named in the complaint, the plaintiff secured from the defendant a portion of the premiums paid by said policy holders on said policies of insurance, which said portions of said premiums are still held by the plaintiff; and the defendant avers that the plaintiff, after he ceased to be defendant's agent procured said policies of insurance to be cancelled for the purprse of depriving the defendant of the benefits thereof, and then bought the unearned premiums in violatiou of the rights of the defendant, which he had no lawful right to do; and hence the defendant avers that plaintiff never procured any lawful title to said claims for unearned premiums, and has no right to maintain this suit thereon."

4. "For further answer, the defendant says the plaintiff has heretofore brought suit for a portion of the account held against the defendant on account of cancelled policies and the return of unearned premiums thereon, in the justice's court before L. J. Haley, a notary public and *ex officio* justice of the peace, who had jurisdiction of the parties and of the subject matter of the suit, and judgment was rendered by said L. J. Haley, N. P. *ex off.* justice of the peace, against this defendant for eighty-one dollars and seventy-four cents ($81.74), and costs of suit, and said judgment is still subsisting and unreversed, and the plaintiff can not now have or maintain the above suit, which is for a part of the same account held by plaintiff against the defendant at the time said suit was instituted by the plaintiff against the defendant before said L. J. Haley, notary public and justice of the peace."

The plaintiff demurred to the second plea, on the ground that it was not verified by affidavit as required by law. To the third plea the plaintiff demurred upon the following grounds : 1st. That it presents no defense to the plaintiff's cause of action. 2d. That it does not deny the averments of the complaint. 3d. That said plea sets up no matter which precludes or estops the plaintiff's recovery. 4th. That the plea sets up no duty, which plaintiff owed defendants, the violation of which would preclude the plaintiff's recovery. 5th. That the averment of the plea that the plaintiff never procured any lawful title to the claim sued upon, was a conclusion of law. To the fourth plea the plaintiff demurred on the

ground that it was not shown which of the claims sued upon in the present action was embraced in the judgment of the justice of the peace. The demurrers to these several pleas were sustained, and issue was joined upon the plea of the general issue. The plaintiff was the only witness examined on the trial of the cause, and his testimony tended to show that the several claims sued on had been regularly transferred to him by the policy holders ; that the policies issued by the defendants gave to the holders thereof the privilege of cancelling their policies, and upon such cancellation they were entitled to a certain proportion of the premiums which had been previously paid ; that the plaintiff was formerly the agent of the defendant company, and as such agent procured the several policy holders to take out their policies in the defendant company.

The contention of the defendant on the trial was, that the policies, which had been cancelled by the respective holders, had been obtained through the agency of the plaintiff when he was the agent of the defendant company ; that a few days after the plaintiff ceased to be the agent of the defendant company, he persuaded the several policy holders to cancel their policies held in the defendant company, and induced them to take in their stead policies issued by another insurance company of which the plaintiff was then the agent ; and that the the claims sued upon were the claims due to the several policy holders upon the cancellation of their policies, which had been cancelled at the instance of the plaintiff. These facts were sought to be brought out upon the trial of the cause, by several questions propounded to the plaintiff as a witness on his cross-examination. Each of such questions were separately objected to by the plaintiff, and the court sustained each separate objection, and to each of these several rulings of the court the defendant separately excepted.

The cause was tried by the court, without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the court upon the evidence and the rendition of judgment in behalf of the plaintiff.

LANE & WHITE, for appellants.—It is a rule of uni-

versal application that one standing in a fiduciary rela-
tion to another, can not place himself in antagonism to
his principal with respect to property coming within the
line of his agency. . The reason of the rule is, that the
law exacts of the agent, the utmost good faith, and will
not allow him, after being placed in a position of trust
and confidence and acquiring knowledge which he would
not otherwise have, to abuse that trust and confidence,
and take advantage of his principal by reason of the
position he occupied as agent.—*Davis v. Hamlin*, 108 Ill.
39 ; *Grumley v. Webb*, 100 Amer. Dec. 304 ; *Vallette v.
Tedens*, 122 Ill. 607 ; *Herman v. Martineau*, 1 Wis. 151,
s. c. 60 Amer. Dec. 368 ; *Winter v. McMillan*, 22 Amer.
St. Rep. 243, s. c. 87 Cal. 256 ; *Potter's App.*, 56 Conn.
1 ; Ostrander on Fire Ins., § 31.

When an agent colludes with the insured to defraud
his principal, the latter will not be bound.   The law re-
quires good faith on the part of an agent, and will not
permit him to act in flagrant disregard of his principal's
interests.   We repeat that the reason of the rule applies
with equal force to one who has just severed his connec-
tion with his principal.—*Edmonstone v. Hartshorn*, 19 N.
Y. 9 ; *Steam Boiler Co. v. Anderson*, 6 N. Y. Supp. 507 ;
*Welland Canal Co. v. Hathaway*, 24 Amer. Dec. 51. .

JOHN P. TILLMAN, *contra.*—1.   The demurrer to the
second plea was properly sustained, because it denied
that plaintiff was the owner of the claims sued on, which,
as he averred, had been transferred and assigned to him,
and was not sworn to.—Rule 29 of Practice in Circuit
Court, Code of 1886, p. 810; *Finnegan v. Frank*, 67 Ala.
21 ; *Mobile Ins. Co. v. Egger*, 67 Ala. 134.

2.   The demurrer to the fourth plea was properly sus-
tained.   This plea was evidently filed on the theory that
the plaintiff had split his cause of action ; and, therefore,
the suit and recovery in the justice's court barred him
from a further recovery.   But each cause of action alleged
in the complaint is as distinct and separate as if they
were several promissory notes.   Again, the plea pro-
fessed to be an answer to the entire complaint ; and yet,
it could not have been an answer to but one count, and
that count is not set forth or pointed out.—*Adams v. Mc-
Millan*, 7 Port. 75 ; *Tomkies v. Reynolds*, 17 Ala. 109 ;
*Wilkinson v. Moseley*, 30 Ala. 562 ; *Standifer v. White*, 9

Ala. 527; *Mills v. Stewart*, 12 Ala. 90; *White v. Yarbrough*, 16 Ala. 109.

3. The demurrer to the third plea was properly sustained. The defense proposed was not a denial of the plaintiff's cause of action. It was, in effect, a confession thereof, and sought to avoid the same, by reason of certain acts of the plaintiff.—*Slaughter v. Swift*, 67 Ala. 494; *Petty v. Dill*, 53 Ala. 641.

HARALSON, J.—1. The demurrer to the 2d plea was properly sustained, for that the plea denied the ownership of the claims sued on, and was not verified as required by rule 29, page 810 of the Code.

2. There was no error in sustaining the demurrer to the 4th plea. Each cause of action in the complaint (73 in number) is distinct and separate from every other one, as much so, as if 73 promissory notes had been declared on, separately, in the same complaint. The principle which forbids the splitting of the same cause of action by bringing two or more suits upon it, has no application here, as the theory, on which the plea is filed, assumed.

3. The real contest in this case, evidenced by the procedure in the court below and the arguments filed in the cause, was upon the demurrer to the 3d plea—as to whether or not the facts therein set up, and as pleaded, constitute a good defense to this action, and preclude a recovery by the plaintiff. The bill of exceptions states, that "The plaintiff introduced in evidence each one of the several policies named in the complaint, separately, together with the receipt for the return of the premiums, and the authority to collect the same by the plaintiff endorsed on it, and a transfer and assignment of Dangaix, Crowder & Co. to the plaintiff of all their interest in said return premiums. Plaintiff also proved the other averment in said complaint." This statement shows that every allegation in the complaint was proved; which entitles the plaintiff to a judgment, unless it appears that he is precluded by matters set up in said plea.

4. It is a principle of universal prevalence, that an agent must not put himself, *during the agency*, in a position which is adverse to that of his principle.—1 Parsons on Contracts, p. 93. This rule can not, perhaps, be more comprehensively and concisely stated, than as we find it in the American notes to *Keech v. Sandford*, 1

Lead. Cases in Eq. 53 : ''Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interests he has become associated.'' *Davis v. Hamlin*, 108 Ill. 40.

We have been unable to find any decided case, or to find the principle asserted in any text-book on agency, which lays down the proposition, that one who has acted as an agent of another, whose agency has terminated, may not, thereafter, if he act in good faith and without fraud, engage in business in competition with, and even to the injury of his former principal. The law has not attempted to prescribe rules for the conduct of one who leaves the service of his first employer and enters that of another. The only restraint the law lays on the retiring agent is, that he must tell the truth when he speaks of his former employer and his business, and shall be guilty of no fraud or deceit at his expense, for the profit of himself or another. If he does, he is personally responsible for the damage he causes.

An insurance agency is a profitable and useful business employment. A good and capable agent of the kind, often controls a large patronage and enjoys a valuable good-will, which he may use or sell. If he should cease to represent one company, and engage to represent another, to the great disadvantage of the first, there is no law to prevent his doing so. Every one who employs an agent does so with the certain knowledge that his agency may terminate at any time, except in so far as it is restrained by contract, and that the agent may transfer himself with all his information, skill and patronage to another rival in business, or set up on his own account, in a competing line. Such persons are hired, often, in consideration of the trade that follows them, and this is legitimate, to the extent that it is fairly influenced.

5. We have thus stated the law as favorably as may be to the claims of the plaintiff. On the other hand, it is certainly true that there are obligations which continue and follow an agent after the termination of his agency. We have a fair illustration of this principle in *Edmonstone v. Hartshorn*, 19 N. Y. Ct. of App. 9, which

[Scottish Union & National Insurance Co. v. Dangaix.]

was a suit by an agent for his salary. It was shown that he had been employed by the defendant to reside in the island of Cuba, as his agent for procuring orders for the manufacture of engines; that he was to be paid $2,400 per annum in equal monthly instalments; that after remaining in Cuba some eight months, plaintiff returned to New York and presented his bill to defendant for the residue of his salary. It was shown in defense, that when the plaintiff left Cuba, he was engaged in a negotiation with a Mr. Bequir for the construction by defendant of a steam engine to be set up on his plantation; that several letters had passed between Bequir and the plaintiff in reference to the character and price of the engine, and the time of delivery. The terms proposed by the plaintiff were accepted by Bequir, in a letter written before the plaintiff left Cuba, but not received by him until after his arrival in New York, and the presentation by him to the defendant of his claim for his unpaid salary; that a few days afterwards, the plaintiff gave the order for the construction of Bequir's engine to a rival establishment by which it was constructed, and the defendant could have complied with Bequir's order within the time limited by it for delivering the engine, and that the profit would have exceeded the entire amount of the plaintiff's salary. Judgment was rendered for the plaintiff. On appeal, that judgment was reversed,—five out of the eight judges concurring. It was held, that if the plaintiff, on his arrival in New York, desired to take no further care of defendant's business, it was his plain duty to have communicated to him the fact that such a correspondence existed; and when in New York, he received Bequir's letter of the 8th of June, with which, except as agent of defendant, he had no concern, he should have transmitted it or communicated its contents to him, and to that extent, at least, he had a duty unperformed which he remained bound to perform to defendant, though his agency was at an end. The court held he was not entitled to recover.

In the case of the *American Steam Boiler Ins. Co. v. Anderson et al.*, 6 N. Y. Supplement Reports 507, the defendants had been the agents of the plaintiff, and as such, insured Hoe & Co. with the plaintiff company, issuing to them two policies to run for three years. By the agreement between plaintiff and defendants, the latter were

to receive 30 per cent. on all premiums received by them on policies issued through their agency. They received this per cent. on the premiums for these two policies, for the entire term they were to run. Before the expiration of the policies, defendants left the service of plaintiff and became the agents of another insurance company, and solicited Hoe & Co. to cancel their policies with plaintiff, and take others in their new company, which they did, and plaintiff, retaining the customary short rate, for which the policies provided in case the insured should at any time desire to cancel them, paid the balance of the premium to the insured. The plaintiff sued the defendants for damages for procuring the cancellation of the policies. The court held that the defendants were, under the terms of their contract, liable to plaintiff for 30 per cent. of the returned premiums, and it was no error to so direct. This case on appeal was affirmed, the court holding, that the power of an agent to create rights by contract for his principals includes an implied duty to observe, and not to defeat or destroy them.—s. c. 29 No. E. Rep. 231.

6. Under the policies described in the complaint, it is not denied that the policy holders had the absolute right to a cancellation of their policies at any time, and were further entitled, by the terms of their contracts of insurance, to have their unearned premiums refunded to them, immediately upon the cancellation of their policies. This was their legal right, and however wrong and inexcusable, in a moral and legal sense, it may have been for the plaintiff, to induce them to cancel their policies and insure with him in other companies, this could not affect their right to cancel, if they elected to exercise it. It is certainly true, that having exercised it, they could have brought and maintained their respective suits against defendant to recover these premiums, on its refusal to pay them. If the policy holders had the right to sue, they had the right to sell and transfer their causes of action to another; and to sustain this plea, we would have to deny their assignee the right to sue, which, without more, under the established rules of pleadings, we can not do.

There was no error in sustaining the demurrer to this plea, nor in excluding the evidence offered on the trial to support its averments. The facts set up in said plea

were not available under the general issue.

7. The authorities to which we have referred maintain the principle, to which we give sanction, that when the plaintiff procured these policies to be issued by the defendant company, and was paid by it to procure them, there was an implied obligation on him, supported by the consideration he had been paid by defendant, as binding as if it had been expressed, and which was continuous during the life of the policies, even after the termination of his agency, that he would not deprive defendant of the fruits of the services it had employed him to render. The policy holders, as we have said, had the unquestioned right to cancel their policies and demand repayment of their unearned premiums; and if they did so, of their own accord, at any time, whether before or after the termination of plaintiff's agency, the plaintiff was in no sense responsible for the act; but, for him, when he quit the defendant's employment, and for purposes of his own gain, to turn about and induce those who had insured with defendant to cancel their policies and insure with him in another company, or in other companies, thereby depriving defendant of the benefits of premiums on policies which he, as its agent had procured, for a certain per cent. of the premiums paid to and still retained by him, was a violation of duty he owed defendant, which finds no sanction in law. Such a course is at war with all proper business principles. If the defendant had known that plaintiff would pursue this course, every one knows it would not have employed him. We have felt impelled to say this much, lest a bare ruling on this plea, might seem to imply a sanction to the course alleged to have been pursued by plaintiff to acquire the title to those causes of action, on which he has obtained a judgment which we affirm.

8. If the defense attempted to be set up in said plea, had been presented by a plea of recoupment properly pleaded; or, if on a proper statement of the facts in a plea to show the fraud, supported by affidivit, it had been made to appear that the transfer to him of these causes of action had been fraudulently procured by plaintiff, and denying his right and title to them, it might have been, that a defense would have been presented in such form as to resist the assault of a demurrer. But, this we need not decide, since such pleas are not before us.

Affirmed.